## Heilbron, Appellant, *v.* Heilbron.

158  297|
171  631|
158       297
27 SC ¹331
158       297
e 31 SC    57

*Divorce—Libel—Pleading—Surplusage—Amendment.*

Where a libel in divorce sets out a statutory cause of divorce in the terms of the statute, but specifies particulars not within the statutory requirement, and tending to negative the general averment, the particulars may be stricken out as surplusage, provided the evidence in the cause sustains the cause of action as averred in the specific terms of the statute. In such case an amendment should be allowed, and a divorce thereupon decreed.

*Divorce—Cruel and barbarous treatment.*

A libel in divorce by a husband against a wife for cruel and barbarous treatment was sustained where the respondent admitted on cross-examination that she broke the glass door of her husband's store and interfered with his customers, that she broke dishes and threw them down stairs, threw hot coffee on the servant girl, and, on two occasions, when her stepsons complained of the dinner, she brought in slop and threw it on the table.

*Alimony pendente lite—Decree—Practice, C. P.*

On an application for alimony pendente lite, the court has no authority in dismissing the libel, to require alimony to be paid "until the further order of the court." The order must be limited to the pendency of the suit, and should terminate with the decree dismissing the libel.

*Order for alimony pendente lite—Order for support.*

The existence of an order of the quarter sessions requiring a husband to pay for the support of his wife, does not prevent the court of common pleas from decreeing alimony pendente lite. Both orders may run concurrently during the pendency of the proceedings, but when the common pleas has awarded a divorce, with or without alimony, the jurisdiction of the quarter sessions will be at an end.

Argued Oct. 25, 1893. Appeal, No. 102, Oct. T., 1893, by plaintiff, Marcus Heilbron, from order of C. P. No. 2, Allegheny Co., July T., 1892, No. 36, dismissing libel in divorce against Rosa Heilbron. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and THOMPSON, JJ.

Libel in divorce.

The libel was as follows :

" The petition of Marcus Heilbron, the plaintiff above named, respectfully showeth : That your petitioner on the fourth day of July, in the year of our Lord one thousand eight hundred

and eighty-five, was lawfully joined in marriage with Rosa Heilbron, and from that time until October 30, 1888, lived and cohabited with her the said Rosa Heilbron, as her husband, and was owned and acknowledged as such by her, and so deemed and reputed by all her neighbors and acquaintances. And although by the laws of God, as well as by their mutual vows and faith plighted to each other, they were reciprocally bound to that constancy and uniform regard which ought to be inseparable from the marriage state; yet so it is that the said Rosa Heilbron from the first day of September, in the year of our Lord one thousand eight hundred and ninety-one, hath offered such indignities to the person of your petitioner as to render his condition intolerable and his life burdensome, and thereby forced him to expend several hundred dollars as she, the said Rosa, demanded a trip to Europe, and was bound to see her parents in Europe and other relatives, and left your petitioner alone at Homestead, in Pennsylvania, and your petitioner was forced to give up his home and break up housekeeping, and thus rendered the condition of your petitioner intolerable and his life miserable and burdensome, and the fact that she remained away and became the scandal and talk of the neighborhood of Homestead, Pennsylvania. Your petitioner further represents that he is at the present time residing in Homestead, Allegheny county, Pennsylvania, and hath resided in the state of Pennsylvania since the year 1848. And your petitioner further showeth, that he is a citizen of the commonwealth of Pennsylvania, and hath resided therein for the period of one whole year previous to filing of this his petition for libel."

The chief points of the evidence are stated in the opinion of the Supreme Court.

Defendant, on cross-examination, testified in part as follows : " I did throw slop on the table on one occasion, it was corn cobs ; I did break the glass door ; I broke about half a dozen dishes as long as I was there ; I did throw coffee on the girl on one occasion, it was because she brought me coffee when I did not want it ; I did throw some dishes down stairs on one occasion,— I think an angel in heaven would get into a temper if he lived there."

Witnesses also testified that she threatened to put poison in plaintiff's meat, threw dishes at him, etc., but defendant denied this.

Dr. Perman testified that plaintiff neglected to provide for defendant in confinement, and talked badly about her.   He further testified : " Judging from what has taken place, I would not think they could get along together.   I think both parties have a little temper."

The court dismissed the libel in the following opinion :

" The libel taken as a whole and fairly interpreted does not set forth a sufficient cause for divorce.   It is true that it says that respondent hath offered such indignities to the person of libellant as to render his condition intolerable and his life burdensome, but he specifies those indignities.   One of them is that she demanded a trip to Europe to see her parents.   The evidence shows that he took her to Baltimore, bought her a steerage ticket and gave her $15.00, with which she had to pay expenses and return, if she could do so.   The evidence indicates that he sent her of his own notion to get rid of her. The weight of evidence is that the respondent is the injured party, and the libellant has no reasonable conception of how a wife should be treated.   It is not probable with the views of the respondent, and his children by a former marriage, as to the relative rights and duties of husband and wife, that the respondent or any other woman could live with him in reasonable comfort.   No case has been made out by libellant.

" The testimony of Dr. Perman throws great light on the situation.   The libellant should be compelled to support his wife and his and her child.

" [And now, March 30, 1893, it appearing to the court that the charges contained in the libel in this case are not sustained by the testimony, and that the libellant has neglected and refused to support the respondent and their child, and has ill treated her :  [It is ordered that the libel be and it is hereby dismissed at the cost of the libellant.   And it is further ordered that he pay to the respondent towards the support of herself and child the sum of six dollars per week until the further order of the court.] " [3] ] [1]

· *Error assigned* was (1, 3) portions of decree as above, quoting them ; (2) in not granting divorce.

*Frank . Whitesell, William W. Whitesell* with him, for appel-

lant, cited: Dunlap's Form Book, 448; Jones v. Jones, 66 Pa.
494; Mason v. Mason, 131 Pa. 161; Act of March 9, 1855, P.
L. 68.

*J. G. Silvius*, for appellee, did not appear.

OPINION BY MR. JUSTICE MITCHELL, November 6, 1893:

The libel sets out a statutory cause of divorce in general
terms, that the respondent had by her conduct rendered the
condition of the libellant intolerable and his life burdensome,
but then unfortunately proceeds to specify particulars which
tend to negative the general averment. "Thereby," it charges,
he was obliged to expend money for a trip to Europe for her,
he was left alone and forced to break up housekeeping, and the
fact that she remained away became the scandal and talk of the
neighborhood. Her going away was by his consent, even if
extorted reluctantly, and if she remained away against his will
and request, that tended to prove desertion, not cruel and bar-
barous treatment. The libel therefore was defective, and if
that were all that was in the case, it was rightly dismissed.

But an examination of the evidence forces us to differ en-
tirely from the view taken by the learned court below. Many
outbursts of temper on the part of respondent, not confined to
bad language and threats, but accompanied by acts of great
violence, are testified to by several witnesses, and are scarcely
denied by the respondent herself. Thus she admits on cross-
examination that she broke the glass door in his store, and inter-
fered with his customers, that she broke dishes and threw them
down stairs, threw hot coffee on the girl, and on two occasions
when her stepsons complained of the dinner she brought in slop
and threw it on the table. The testimony of the other witnesses
enlarges this list considerably by matters not necessary to de-
tail. Her own admissions give them more force than possibly
they might have of themselves. The weight of the evidence
shows a course of conduct well calculated to make any man's
life burdensome. The libellant's conduct was not nice or lib-
eral, but we see no ground for saying that the respondent was
the injured party. On the contrary, a case for divorce on the
general ground of conduct rendering libellant's condition in-
tolerable and his life burdensome, is made out.

The libel as already said was formally defective, but the defect was in setting out too much, not too little.  A good cause of action is averred in the terms of the statute, and the evidence sustains it.  The particulars which make the libel inconsistent and therefore demurrable, may be struck out as surplusage without in any way changing the cause of action, or the relevancy of the evidence to it.  We are of opinion that an amendment in that respect should be allowed, and thereupon a divorce decreed.

The decree made was also erroneous in another respect which must have been an oversight of the learned court below.  It ordered alimony to be paid at the rate of six dollars a week "until the further order of the court."  For this there was no warrant.  The respondent's petition was for alimony pendente lite, and the order of the court should have been limited to the pendency of the suit.  With the decree dismissing the libel the order for alimony should have terminated.

The existence of an order of the quarter sessions requiring libellant to pay six dollars a week for the support of his wife, did not prevent the court of common pleas from decreeing alimony pendente lite.  On the contrary, the superior or rather the more general jurisdiction on this subject is in the divorce court.  It may decree such sum as the circumstances call for, to be commensurate with the position and financial ability of the parties.  The quarter sessions on the other hand is limited to the prevention of the wife becoming a charge on the public.  Both orders may run concurrently during the pendency of the proceedings, but when the common pleas has awarded a divorce, with or without alimony, the jurisdiction of the quarter sessions will be at an end.

Decree reversed and procedendo awarded.