607 A.2d 735

**Elizabeth O'CALLAGHAN, Appellee,**

v.

**William A. O'CALLAGHAN, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1991.

Decided May 18, 1992.

Ronald Ervais, Mary Jane Deaves Hopkins, Philadelphia, for appellant.

Jane M. Schoener, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

The parties to this appeal were married on November 5, 1953. Four children were born of this marriage, all of whom are now adults. Because of severe marital problems, the parties separated on October 1, 1982.[1] A complaint for divorce was filed on August 13, 1982.[2] Hearings before the court appointed master were held March 30 through April 1, 1987. At the conclusion of the hearings, the master recom-

1. The accusations levied by each spouse against the other are quite explicit. In fact, the trial judge noted that "the tone and language of [the wife's] Bill of Particulars is the most vulgar and offensive this court has ever encountered." Trial court opinion of April 20, 1989, p. 2. Having reviewed this record, we agree. We also find it unnecessary for attorneys to graphically outline allegations of wrongdoing. We would hope that lawyers, as professionals, can remove themselves from the emotions of divorce and adequately protect the interests of their clients with dignity. Because many of the lewd accusations are irrelevant to this appeal, we will not recite them in this opinion.

2. The record is unclear as to why the complaint was filed prior to separation.

mended that a divorce be granted and that the wife receive 60% of the marital property. Furthermore, the master denied the wife's request for alimony.

Both parties then filed exceptions. After reviewing the exceptions, the trial court adopted the recommendations of the master. The wife then appealed to Superior Court which affirmed the granting of the divorce and the distribution of the marital property, but reversed the trial court with respect to the denial of alimony. 389 Pa.Superior Ct. 319, 567 A.2d 308. We then granted husband's Petition for Allowance of Appeal and now reverse.

The scope of review in assessing the lower court's disposition of an alimony claim is whether the trial court abused its discretion. *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983). Likewise, in evaluating a trial court's action in distributing marital property, we will not disturb that court's action unless it has abused its discretion. *Bold v. Bold,* 524 Pa. 487, 574 A.2d 552 (1990); *Hovis v. Hovis,* 518 Pa. 137, 541 A.2d 1378 (1988). As we have stated so many times, an abuse of discretion occurs when a trial judge's judgment is manifestly unreasonable or is the result of prejudice, bias or ill-will. *Hainsey v. Pennsylvania Liquor Control Board,* 529 Pa. 286, 602 A.2d 1300 (1992). Although it is not our responsibility to create the record or evaluate credibility, we must review the existing record to be satisfied that sufficient facts are present to substantiate the lower court's order. If sufficient evidence is of record to support the trial judge's action and the trial judge has properly applied existing case law to the facts, then we must affirm.

Evidence offered during the master's hearings established that since 1969, wife, age 55, worked as a paralegal immigration specialist for George Gershenfeld, her divorce attorney, at a salary of $150.00 a week.[3] In 1971, her weekly salary was $130.00. In addition to her salary,

3. It is interesting to note that wife's daughter was hired by Mr. Gershenfeld in 1987 as a secretary and/or messenger at a weekly salary of $250.00.

Gershenfeld paid many additional expenses for wife including her weekly food bill, telephone bill, vitamin bill, charge card bill and car insurance bill. The wife also travelled extensively in the 1980's to the Orient, Europe, South America and the West Coast in furtherance of her specialty. Together with Gershenfeld, wife also set up an import business under the name Bet Tee Oh, Ltd. The wife was very evasive about the workings of this corporation. Since Bet Tee Oh filed no income tax returns, establishing the financial condition of that corporation was quite difficult.

With regard to wife's health, testimony established that her health has been somewhat declining since 1984 due to rheumatoid arthritis. Wife testified that she was no longer capable of working on a full-time basis because of her health problems. However, wife never applied for social security disability.

Husband, age 58, was a pharmaceutical salesman employed by Hoffman LaRoche for 24 years. He netted $40,000.00 from a yearly gross salary of $56,000.00. In addition, husband's employer directly reimbursed him for all his automobile expenses. Since separation, husband has paid alimony pendente lite in the form of mortgage, insurance, taxes and utility payments for the marital residence as well as the balance of certain charge cards.

The marital assets of the parties consisted of the following:

| | | |
|---|---|---|
| (a) | Premises 3335 W. Queen Lane, Phila. Pa... | $ 80,534.59 |
| (b) | 1974 Ford Thunderbird and 1980 Oldsmobile | 1,100.00 |
| (c) | Household Furnishings | 3,500.00 |
| (d) | Germantown Savings | 1,115.00 |
| (e) | Girard Accounts # 6–145–965 and 099–846–2220 7–045–495 | 958.85 |
| (f) | Bet Tee Oh, Ltd. | 5,000.00 |
| (g) | Hoffman La Roche Credit Union Account # 56180 | 7,469.13 |
| (h) | Curtis Wright Stock | 9,000.00 |
| (i) | Provident National Bank Acct. # 56180 | 5,976.12 |
| (j) | Clean–Rite, Inc. Investment Return | 4,400.00 |
| (k) | Germantown Savings Acct. # 1–334439 | 5,093.00 |

180

(*l*) Defendant's Hoffman, La Roche Pension
Plan ..................................79,455.28
$213,601.97

Record 47a.

---

Based upon these assets, the master recommended and the trial court awarded a 60% share of marital property to wife with husband receiving 40%. As such, wife received $128,161.18 in assets, in cash and in kind, while husband received $85,440.79. Furthermore, the wife's request for alimony was denied.

In reversing the trial court's denial of wife's alimony claim, the Superior Court held that the trial court did not adequately take into consideration wife's medical condition. Unlike the Superior Court, the master did not base her determination solely on wife's medical condition. Instead, the master based her recommendation on several factors.

First, the master was of the opinion that the wife's testimony regarding inability to work was not credible. In fact, the master believed that someone with the wife's experience could earn far more than the $7,800.00 she claimed she earned in 1986. Furthermore, since 1982, the wife had received the economic benefit of receiving alimony pendente lite from her husband. Finally, a 60/40 division of marital property was deemed appropriate due in part to the "physical problems now which have manifested after the separation and which certainly will prove debilitating as the years go on, although (wife) has been working with it and has been taking trips out of the country, in spite of debilitating arthritis." Masters Report at p. 14.

After considering all of the factors set forth in Section 401(d) of the Divorce Code, 23 P.S. § 401(d)[4], including wife's physical condition, the master recommended a 60/40 division of marital property. Thereafter, in adopting the

4. The Divorce Code has since been repealed and replaced by the Domestic Relations Code, the Act of December 19, 1990, P.L. 1240, No. 206 § 2, 23 Pa.C.S. § 101.

recommendation of the master regarding the 60/40 division of marital property, the trial court stated:

> In addition, Wife's medical impairments were fully considered in the Master's award of the marital property sixty (60%) per cent to Wife and forty (40%) per cent to Husband.

Trial court opinion of April 20, 1989 at p. 14.

Although there does appear some evidence of record to suggest that wife does suffer from a physical impairment, other evidence appears of record which suggests that notwithstanding her physical impairment, wife was an "active businesswoman" who demonstrated signs of dramatic improvement. We agree with husband that the issue of physical impairment and ability to earn an income is a factual one. On this record, we cannot conclude that insufficient evidence was presented to support the findings of the master as adopted by the trial court. In any event, both the master and the trial court indicated that wife's physical impairment was considered in awarding 60% of the marital assets to her. Therefore, we find no abuse of discretion on the part of the trial court in denying wife's claim for permanent alimony.

The judgment of the Superior Court is reversed and the equitable distribution order dated March 1, 1988, is reinstated.[5]

---

5. Having found that Superior Court abused its discretion in reversing the trial court with regard to the denial of alimony, it is unnecessary to address husband's second issue regarding Superior Court's remand to the trial court for disposition of the alimony issue only.

 However, since a trial court must take into consideration marital property distributed under Section 401(d) of the Divorce Code when considering an award of alimony and the sources of incomes of both parties becomes relevant in determining an equitable distribution award under Section 401(d), it is clear that remanding a final order denying alimony for reconsideration of alimony alone without taking into consideration the equitable distribution award is improper. The purpose of our Divorce Code is to effectuate "economic justice". *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988); *Hovis v. Hovis,* supra. Therefore, Sections 401 and 501 of the Divorce Code must be considered together. To do otherwise would defeat the intended purpose of the Divorce Code.