663 A.2d 169

LaDonna C. JAYNE

v.

Robert F. JAYNE, Appellant.

LaDonna C. JAYNE, Appellant,

v.

Robert F. JAYNE.

Superior Court of Pennsylvania.

Argued April 6, 1995.

Filed July 20, 1995.

Ray DePaola, Towanda, for Robert F. Jayne.

Gerald A. Kinchy, Sayre, for LaDonna C. Jayne.

Before CIRILLO, JOHNSON and SAYLOR, JJ.

CIRILLO, Judge:

Appellant Robert F. Jayne (Husband) appeals, and Ladonna C. Jayne (Wife) cross-appeals, from an order in the Court of Common Pleas of Wyoming County entering a final decree in divorce, ordering equitable distribution of the marital property, requiring Husband to pay alimony, and denying both parties' exceptions to the Master's report. We affirm in part, and reverse in part.

The parties were married on June 17, 1967. Two children were born of the marriage, one of whom is a minor.[1] On August 19, 1991, Wife filed a complaint in divorce on the grounds of irretrievable breakdown and indignities. Wife also

---

1. Delana was born on November 15, 1971, and Delecia was born on June 25, 1977.

petitioned the court for equitable distribution of the marital assets, alimony, spousal support, custody, child support, alimony pendente lite, counsel fees and costs.[2] Husband responded to Wife's complaint by joining in the request for divorce on the grounds of irretrievable breakdown. The parties separated on August 28, 1991, and Husband left the marital home.

The trial court adopted the recommendations of the Master, Selyne K. Youngclaus, Esquire. The Master's recommendations included, *inter alia,* a decree in divorce on the ground of indignities. Both parties filed exceptions to the Master's recommendations. These exceptions were denied by the trial court. On appeal, Husband raises seven issues for our consideration:

(1) Did the trial court commit error in granting Wife a divorce on the grounds of indignities?

(2) Did the trial court commit error in awarding alimony to Wife in light of the 60/40 division of property in favor of Wife?

(3) Did the trial court commit error in failing to credit Husband for payments made by him, with the exception of interest payments, for loans relating to the car wash between the time of the parties' separation and the hearing, despite the fact that, in support actions, the income from the car wash was attributable to Husband with no consideration being given to these payments?

(4) Did the trial court commit error in failing to take into consideration a $6,000.00 loan incurred by Husband during the parties' separation which was used to keep the car wash operating?

(5) Did the trial court commit error in failing to credit Husband for payments made to Penelec and Commonwealth

---

**2.** Custody of Delecia was placed with Wife pursuant to a prior court order. As Delana was over the age of eighteen at the time the court order was entered, she was not included in said order. Also, the Master made no recommendation regarding the issues of support as these issues were within the jurisdiction of the Domestic Relations division of the court.

Telephone for debts incurred by Wife during the period of separation?

(6) Did the trial court commit error in failing to credit Wife with the receipt of $3,500.00 in personal property in her possession at the time of the equitable distribution?

(7) Did the trial court commit error in awarding the Corvette to Wife without recognizing the value of the automobile?

On cross-appeal, Wife questions the amount, as well as the duration, of the trial court's award of alimony. Wife contends that the trial court erred in limiting alimony to her in the amount of $200.00 per month for only twenty-four months.

Initially, Husband claims that the trial court committed error when it granted Wife a divorce on grounds of indignities. Our standard of review in cases involving divorce decrees is well-settled:

> [I]t is the responsibility of this court to make a *de novo* evaluation of the record of the proceedings and to decide independently of the master and lower court whether a legal cause of action in divorce exists. The Master's recommendation, therefore, is advisory only. The exception to this general rule is that in determining issues of credibility the Master's findings must be given the fullest consideration for it was the Master who observed and heard the testimony and demeanor of various witnesses.

*Schuback v. Schuback*, 412 Pa.Super. 233, 235, 603 A.2d 194, 195–96 (1992) (quoting *Dukmen v. Dukmen*, 278 Pa.Super. 530, 534, 420 A.2d 667, 670 (1980)) (citations omitted). Thus, we must review the record and determine, independently, whether a legal cause of action in divorce exists.

In her complaint, Wife sought a divorce based upon no-fault as well as fault grounds. Specifically, Wife requested that a decree of divorce be entered based on irretrievable breakdown and also based on indignities.

Section 3301(d) of the Divorce Code provides for a no-fault divorce if the parties have lived separate and apart for the

statutory period and the marriage is irretrievably broken. Irretrievable breakdown is set forth in the statute as follows:

**(d) Irretrievable breakdown.—**

(1) The court may grant a divorce where a complaint has been filed alleging that the marriage is irretrievably broken and an affidavit has been filed alleging that the parties have lived separate and apart for a period of at least two years and that the marriage is irretrievably broken and the defendant either:

(i) Does not deny the allegations set forth in the affidavit.

(ii) Denies one or more of the allegations set forth in the affidavit but, after notice and hearing, the court determines that the parties have lived separate and apart for a period of at least two years and that the marriage is irretrievably broken.

\* \* \* \* \* \*

23 Pa.C.S. § 3301(d). Section 3301(a)(6), one of the fault grounds for divorce, describes the ground for divorce based on indignities:

**(a) Fault**—The court may grant a divorce to the innocent and injured spouse whenever it is judged that the other spouse has:

(6) Offered such indignities to the innocent and injured spouse as to render that spouse's condition intolerable and life burdensome.

23 Pa.C.S.A. § 3301(a)(6). The trial court granted a divorce pursuant to Section 3301(a)(6) based on its findings of fact and conclusions of law that Husband committed indignities toward Wife and that Wife was an innocent and injured spouse.

This court has stated that indignities, as a fault ground for divorce, may consist of "vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement." *Dukmen*, 278 Pa.Super. at 534, 420 A.2d at 669–70 (citations omitted). Also, "there are two requirements for a divorce based on indignities: (1) the existence of indignities and (2)

the direction of them to an innocent and injured spouse." *Schuback*, 412 Pa.Super. at 236, 603 A.2d at 196.

Wife testified at the Master's hearing that she believed Husband was engaged in an extra-marital affair. Also, the Master took judicial notice of the Protection From Abuse proceedings which were commenced post-separation based upon an incident which occurred shortly after Husband removed himself from the marital home. Based upon this evidence, the Master concluded that "[t]he facts testified to by [Wife] are sufficient to establish the averments in the complaint setting forth a cause of action on the ground of indignities." We disagree.

Initially, we point out that, in an action for divorce based upon indignities, "[t]he burden is on the plaintiff to demonstrate a course of conduct on the part of the defendant spouse which is humiliating, degrading, and inconsistent with the innocent and injured spouse's position rendering his[/her] condition intolerable and his[/her] life burdensome." *Jones v. Jones*, 311 Pa.Super. 407, 411–12, 457 A.2d 951, 953 (1983) (citation omitted). While Wife testified at the Master's hearing that she had confronted Husband concerning the alleged affair, she also testified that Husband denied these allegations by stating that he had only been friends with the other woman. Wife offered no additional testimony supporting her allegation that, prior to the filing of her complaint in divorce, Husband was engaged in an extra-marital affair. While "[i]t is true that a spouse's relationship with a member of the opposite sex, other than his or her spouse, may constitute an indignity even when the evidence is insufficient to sustain a charge of adultery[,] ... evidence of friendship alone is not sufficient to prove indignities; there must be additional evidence." *Narbesky v. Narbesky*, 255 Pa.Super. 48, 54, 386 A.2d 129, 132 (1978).

■ In addition, we have held that the marital misconduct which must be considered with regard to a divorce based upon indignities is that misconduct which occurred prior to the right to divorce accruing. *Schuback*, 412 Pa.Super. at 236, 603 A.2d

at 196. As a result, any misconduct in which Husband may have engaged after the separation is not to be considered unless it goes to support misconduct occurring prior to the accrual of the right to divorce. *Bonawitz v. Bonawitz*, 246 Pa.Super. 257, 262, 369 A.2d 1310, 1312 (1976). In other words, Husband's conduct after Wife's filing of the complaint for divorce should not be considered in deciding the sufficiency of the allegations in that complaint for a divorce based on indignities unless it is related to or supports similar conduct prior to the accrual of the right to divorce. *See McCaskey v. McCaskey*, 253 Pa.Super. 360, 385 A.2d 378 (1978) (holding that proof of indignities occurring after parties' separation was admissible as evidence **which shed light upon** the behavior of the parties prior to separation); *Lee v. Lee*, 185 Pa.Super. 252, 137 A.2d 827 (1958) (holding that the conduct of the parties after separation is relevant for the purpose of **shedding light upon** their behavior **prior to** the separation). Accordingly, Husband's post-separation conduct concerning an alleged extra-marital affair, as well as the post-separation Protection From Abuse Proceedings, should not have been considered by the Master since the record does not support that they shed light upon the behavior of the parties prior to their separation.

Further, the Master found that regardless of whether Husband actually engaged in an extra-marital affair, this issue caused continuous arguments between the parties which ultimately led to their separation, thereby justifying a divorce granted in Wife's favor based on indignities. Both parties testified that they were not getting along and had encountered problems for a long time. The record, therefore, does not support the Master's conclusion that, even though both parties were not getting along, that one party, Husband, was the more responsible party thereby justifying a divorce granted in Wife's favor based on indignities. *See Vajda v. Vajda*, 337 Pa.Super. 573, 487 A.2d 409 (1985) (holding that where there is nearly equal contribution by the parties to the marital discord, a divorce will not be granted in favor of either spouse); *Keller v. Keller*, 275 Pa.Super. 573, 419 A.2d 49 (1980) (same).

Moreover, the requirement of "an innocent and injured spouse" has not been satisfied in this case. We have stated:

> In addition to proving indignities, the moving party must also prove that he or she is the injured and innocent spouse.... It has been said that a finding that the moving party is the innocent and injured spouse is a prerequisite for entitlement to a divorce on the grounds of indignities.

*Beaver v. Beaver*, 313 Pa.Super. 512, 516, 460 A.2d 305, 307 (1983); *accord Crawford v. Crawford*, 429 Pa.Super. 540, 633 A.2d 155 (1993). The Master noted that Husband's actions were not "sufficiently provoked by [Wife] so as to disallow the granting of a divorce on the ground that [Wife] was not the innocent and injured spouse." While both parties testified that they were not "getting along" and experienced problems with each other for a long time, the Master attributed these problems to Husband. This is improper. While we recognize that in determining issues of credibility the Master's findings must be given the fullest consideration, we emphasize that the record must support the Master's conclusions and the findings upon which those conclusions are based. *Schuback, supra* at 412 Pa.Super. 233, 603 A.2d 194.

Finally, we emphasize that the purpose of the legislature's enactment of no-fault provisions in divorce in addition to the traditional fault provisions was to provide for dissolution of marriage in a manner which would keep pace with contemporary social realities and not to advance "the vindication of private rights or the punishment of matrimonial wrongs." *See* 23 Pa.C.S.A. § 3102(a); *Perlberger v. Perlberger*, 426 Pa.Super. 245, 626 A.2d 1186 (1993). The entry of a fault divorce is inappropriate, in a case such as this, when the record does not support the entry of a fault divorce, but, rather, supports the entry of a no-fault divorce. Accordingly, the entry of a fault divorce granted in Wife's favor on the ground of indignities was error, as the record supports that a no-fault divorce based upon grounds of irretrievable breakdown should have been entered.[3]

---

**3.** Husband and Wife have lived separate and apart for the statutory period and the marriage is irretrievably broken, thereby providing grounds for a no-fault divorce pursuant to Section 3301(d).

Next, we address Husband's and Wife's complaints regarding the award of alimony. Husband claims that the trial court erred in awarding alimony to Wife in light of the 60/40 division of property in favor of Wife. Wife, on the other hand, claims on cross-appeal that it was error for the award of alimony to be limited to $200.00 per month for only twenty-four months.

Our scope of review for purposes of evaluating a trial court's award of alimony is limited to a determination of whether the trial court abused its discretion. *Nemoto v. Nemoto*, 423 Pa.Super. 269, 620 A.2d 1216 (1993). An abuse of discretion exists when the judgment of the trial court is manifestly unreasonable or is the result of prejudice, bias or ill-will. *O'Callaghan v. O'Callaghan*, 530 Pa. 176, 607 A.2d 735 (1992). While it is not an appellate court's duty to create the record or assess credibility, we must nevertheless examine the existing record to ascertain whether sufficient facts are present to support the trial court's order. *Id.* If sufficient evidence exists in the record to substantiate the trial court's action, and the trial court has properly applied accurate case law to the relevant facts, then we must affirm. *Id.* Also, the purpose of alimony is not to reward one party and punish another, but rather to ensure that the reasonable needs of the person who is unable to support himself/herself through appropriate employment are met. *Nemoto, supra.*

In the recommendation adopted by the trial court, the Master specifically considered all relevant factors set forth in 23 Pa.C.S.A. § 3701 for determining whether alimony is necessary. Our review of the record reveals that, although Wife received 60% of the marital estate and Husband received 40%, a temporary award of alimony is necessary under all of the circumstances in this case, including the fact that Wife is not presently able to support herself. The Master pointed out that the great disparity between the actual earnings of the parties can be lessened once Wife obtains full time employment.

Prior to the opening of her ceramic business in 1982, Wife operated her own beauty shop for twenty-two years and,

although she has not actively worked as a beautician for several years, she still maintains her hair dressing license in this Commonwealth as well as the State of New York. Wife has also taken an adult typing class and has applied for employment as a secretary. Thus, Husband's claim is without merit because the Master properly determined, after considering all relevant factors, that alimony of $200.00 per month for twenty-four months was necessary and sufficient to enable Wife to become self-supporting. This award of alimony would enable Wife to obtain "refresher" courses to update her training as a hair dresser or to pursue other self-supporting employment.

Similarly, Wife's claim that she is entitled to permanent alimony is without merit in view of factors considered by the trial court and since she has the tools which will enable her to become self-supporting. Consequently, the trial court did not abuse its discretion in adopting the Master's recommendations and denying Husband's and Wife's objections to the award of alimony. *O'Callaghan, supra; Nemoto, supra.*

Husband's next contention on appeal is that the trial court erred by failing to credit him for payments on loans related to the car wash business when calculating his support obligations. Husband argues that, in prior support actions, the Wyoming County Domestic Relations Office attributed to him income from the car wash in determining the amount of support due to Wife and the parties' children but that the Domestic Relations Office failed to offset that income by the loan repayment expenses incurred by Husband. This court has recognized that:

> it is not unusual in a small business setting ... for a proprietor to own as well as manage the business. This arrangement does not render a proprietor's business decisions inherently suspicious or unreasonable. When these business decisions impact other obligations, such as support payments, an inquiry by the courts should be carefully tailored.

*Labar v. Labar,* 434 Pa.Super. 612, 619, 644 A.2d 777, 781 (1994). Moreover, "in evaluating a parent's support obli-

gation[,] the lower courts should consider the parent's income . . . and the full nature of the parent's property interests and financial resources." *Lyday v. Lyday*, 360 Pa.Super. 16, 22, 519 A.2d 967, 970 (1986) (quoting *Commonwealth ex rel. ReDavid v. ReDavid*, 251 Pa.Super. 103, 380 A.2d 398 (1977)). We have also held that "only actual expenses may be deducted to determine [the husband's] income to which [the wife] may look for her support." *Commonwealth ex rel. Rankin v. Rankin*, 170 Pa.Super. 570, 573, 87 A.2d 799, 800 (1952).

■ In this case, Husband argues that his support obligations were based upon the income generated from the car wash business and that this income was calculated without first deducting from that income the payments for loans related to the car wash. We find that the trial court should have evaluated Husband's claims by inquiring into these expenses incurred on behalf of the car wash business and whether these expenses would have affected his support obligations. *Labar, supra; Lyday, supra; Rankin, supra.* Accordingly, the trial court is ordered to address this issue on remand.

■ Husband next argues that the trial court erred in failing to credit him with the payment of a $6,000.00 loan, which Husband claims was obtained to keep the car wash operational. The testimony presented at the Master's hearing revealed that Husband borrowed $6,000.00 after the parties' separation. To secure the loan, Husband gave the bank a lien on his pick-up truck. Husband claims that the pick-up truck, rather than the car wash, was used as collateral for the loan because the car wash was in his and his Wife's names. Also, the $6,000.00 was placed in Husband's personal bank account, rather than the car wash's bank account. Nevertheless, the closest Husband came to specifically identifying where the money was utilized in the car wash business was that the money was used to pay "various bills." The only evidence on the record as to the use of the $6,000.00 was Husband's testimony, which is an issue of credibility. Since the Master was in the best position to assess Husband's credibility as to

what use was actually made of the loan, his credibility determination will not be disturbed. *Schuback, supra.*

Husband's next issue is whether the trial court committed error in failing to credit Husband for payments made for joint bills of the parties, including telephone bills, credit card bills, and payments made for Wife's automobile. The Master recommended that Wife was in need of alimony pendente lite during the pendency of the divorce. The Master specifically recognized that during the parties' separation, Husband had paid to Wife or on her behalf $4,691.54 for the payment of various bills. The Master concluded that, while Wife was to be awarded alimony pendente lite, Husband had already paid her $4,691.54, and, therefore, Husband was to "receive credit for the $4,691.54 previously paid and that [the alimony pendente lite] award be limited to that amount." Thus, because Husband's duty to pay alimony pendente lite was limited to the $4,691.54, the amount he had already contributed towards the payment of bills, Husband was found to have satisfied his alimony pendente lite obligation.

■ Husband argues that the Master's award of alimony pendente lite was improper in light of his concurrent duty to pay spousal support in the amount of $80.00 per week. Our standard of review for awards of alimony pendente lite is well settled. If an order for alimony pendente lite is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court. *Wayda v. Wayda,* 395 Pa.Super. 94, 576 A.2d 1060 (1990) (quoting *Fichthorn v. Fichthorn,* 368 Pa.Super. 305, 533 A.2d 1388, 1389 (1987)).

■ Alimony pendente lite means alimony or maintenance "pending litigation" and is payable during the pendency of a divorce proceeding so as to enable a dependent spouse to proceed with or defend against the action. *Heilbron v. Heilbron,* 158 Pa. 297, 27 A. 967 (1893); *DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871, *alloc. denied,* 517 Pa. 631, 539 A.2d 811 (1987). Alimony pendente lite is designed to be temporary and is available to those who demonstrate the need for maintenance and professional services during the pendency of

the proceedings. *DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508 (1987); *Pollice v. Pollice,* 277 Pa.Super. 1, 419 A.2d 630 (1980).

The obligation to pay alimony pendente lite continues following the entry of the bifurcated divorce decree until all economic issues have been resolved.[4] *Horn v. Horn,* 388 Pa.Super. 46, 564 A.2d 995 (1989). This court has held that this obligation continues even after the entry of a final decree in equitable distribution when an appeal remains pending and terminates only after all litigation has ended. *DeMasi v. DeMasi (II),* 408 Pa.Super. 414, 597 A.2d 101 (1991). We have also held, however, that alimony pendente lite may be terminated before the litigation is concluded where the recipient has acquired assets or income which sufficiently equalizes the financial ability of the parties to pursue the action. *See, e.g., Nemoto, supra; Spink v. Spink,* 422 Pa.Super. 126, 619 A.2d 277 (1992).

In *Nemoto,* we had occasion to review a trial court's termination of an alimony pendente lite order. We recognized that the termination of litigation involving divorce and equitable distribution matters unquestionably results in the cessation of an alimony pendente lite order. *Nemoto,* 423 Pa.Super. at 280, 620 A.2d at 1221. We pointed out, however, that "[t]his rule does not mean ... that *only* the termination of the

4. Concerning the relationship between spousal support and alimony pendente lite, an award of spousal support may be converted to alimony pendente lite when a divorce is bifurcated from the economic claims. *Desch v. Desch,* 329 Pa.Super. 22, 477 A.2d 883 (1984). This court in *McKeown v. McKeown,* 417 Pa.Super. 520, 612 A.2d 1060 (1992) held that this conversion from spousal support to alimony pendente lite was not automatic and required some affirmative action on the part of the payee. This rule has since been changed under Pennsylvania Rule of Civil Procedure 1920.31(d) which provides, in its entirety, "Upon entry of a decree in divorce, any existing order for spousal support shall be deemed an order for alimony pendente lite if any economic claims remain pending." Pa.R.C.P. 1920.31(d). The 1994 explanatory comment to Rule 1920.31 states that subsection (d) was created to change the decision in *McKeown* so that spousal support can be converted automatically to alimony pendente lite since there is a need in many cases for alimony pendente lite after the decree is entered, just as there was a need for spousal support before the decree.

litigation may mark the end of APL [alimony pendente lite]." *Id.* (emphasis in original). If the spouse who had been receiving alimony pendente lite has acquired assets or income which sufficiently equalized the financial resources of the parties to pursue the action, then alimony pendente lite may be discontinued. *Id.* (citing *Spink,* 422 Pa.Super. at 132, 619 A.2d at 279). The record in *Nemoto* showed that wife had adequate assets and income available to her through equitable distribution, alimony, and her own earning capacity so that she could litigate the case as she chose. *Nemoto,* 423 Pa.Super. at 280–81, 620 A.2d at 1221–22.

 In this case, the Master recommended that Wife was in need of alimony pendente lite. There was no entry of a bifurcated divorce decree, however, as the trial court ordered that Husband and Wife were divorced at the same time that it adopted the Master's recommendations concerning equitable distribution of the marital property, alimony, alimony pendente lite, costs, and counsel fees. Therefore, all economic issues were resolved when the trial court adopted the Master's recommendation concerning alimony pendente lite. We find that, even though the obligation to pay alimony pendente lite normally continues after the entry of a divorce decree in equitable distribution and terminates after all litigation has ended, this case provides us with a situation as in *Nemoto* where the recipient has acquired assets/income which sufficiently equalized the financial ability of the parties to pursue the action. Specifically, total distribution to Wife was $225,-866.84, in addition to alimony to be paid to Wife in the amount of $200.00 per month for twenty-four months. As a result, the award of alimony pendente lite was improper.[5] *Wayda, supra.*

5. In addition, it is important to point out that the trial court's award of alimony pendente lite is actually a misnomer under the circumstances in this case. The Master recommended that Wife was entitled to alimony pendente lite, but determined that she would not receive any assistance under this award other than what Husband had already paid to her or on her behalf during the separation. Therefore, while the purpose of alimony pendente lite is to provide a dependent spouse with maintenance and professional services during the pendency of the proceedings, the Master's recommendation did not serve this purpose

■ Husband argues, however, that he should be given credit for payments totalling $4,691.54 which were made by him to Wife, or on Wife's behalf, and which were paid over and above his spousal support order during the period of separation. We find no merit in Husband's argument. Husband was only required to pay spousal support during the period of separation. The voluntary payment of Wife's expenses from his own resources will not be credited at equitable distribution. *See, e.g., Hunsinger v. Hunsinger,* 381 Pa.Super. 453, 554 A.2d 89 (1989) (holding that expenses voluntarily incurred post-separation may not be credited at equitable distribution); *but see Grandovic v. Grandovic,* 387 Pa.Super. 619, 564 A.2d 960 (1989) (holding that payment *with marital assets* of joint debts, which had been incurred post-separation, requires an add-back to the marital estate) (emphasis supplied). Husband does not claim that the payment of these expenses were paid with marital assets, nor does Husband refer this court to any cases supporting the proposition that he should be credited for his voluntary payment of these debts/expenses.[6]

since the award was merely a label for assistance which Husband had already provided. Restated, the Master's recommendation of alimony pendente lite provided no maintenance to Wife during the pendency of the proceedings.

**6.** Husband had argued that the note following Pennsylvania Rule of Civil Procedure 1910.16–1 for Amount of Support, Support Guidelines, prevents orders for spousal support and alimony pendente lite from being in effect simultaneously. The note to Rule 1910.16–1 provides, in its entirety, "Orders for spousal support and alimony pendente lite shall not be in effect simultaneously." Pa.R.C.P. 1910.16–1 note.

The Master had determined that Husband had made certain payments of marital debts after the parties separated, but also determined that Wife was entitled to alimony pendente lite. The Master concluded that the amount of marital debts which Husband had paid during the separation was equal to his obligation for alimony pendente lite and, therefore, found that Husband had satisfied his alimony pendente lite obligation. Husband challenged this as effectively charging him with payment of spousal support and alimony pendente lite simultaneously in violation of the note to Rule 1910.16–1.

In light of our disposition of this issue, we need not reach the question of whether the note that follows Rule 1910.16–1 applies retroactively to the improper award of alimony pendente lite in this case. Nonetheless, we question Husband's assumption that he should be credited for his payment of debts when almost half of those debts, that is the credit card bills, were attributable to only him and not Wife.

Husband also contends that the trial court erroneously failed to credit Wife with the receipt of $3,500.00 in personal property which was in her possession at the marital home at the time of the equitable distribution hearing. The record reflects that defense counsel's enumeration and appraisement of each item on Husband's inventory and appraisement list was interrupted by a stipulation by the parties that all of the household furnishings in the marital home at that time had a fair market value of $7,000.00 for purposes of distribution. Excluded from this stipulation was a grandfather clock, ceramic items which were part of the ceramic business, and eighty shares of stock from Grange National Bank.

Husband now asks this court to compensate him for items which Wife had in her possession and which the trial court allegedly failed to consider for equitable distribution purposes. Specifically, Husband claims that the trial court failed to consider that Wife had in her possession a $1,500.00 dividend check from Proctor and Gamble, a $1,000.00 savings bond, and $1,000.00 in old coins. We believe that the stipulation entered into by the parties covers these items and, even if it did not, it was Husband's responsibility to bring these items to the attention of the trial court for purposes of excluding them from the stipulation if it was Husband's intention to do so. *Kadel v. McMonigle,* 425 Pa.Super. 253, 624 A.2d 1059 (1993) (holding that the Divorce Code is intended to provide the exclusive means of property determinations between divorcing spouses and a party may not attempt post decree to litigate property issues which could have been raised in the divorce proceedings).

Lastly, Husband submits that the trial court committed error in awarding Wife the 1972 Chevrolet Corvette without first recognizing the value of the automobile. Pursuant to a stipulation between the parties, the value of the Corvette was set at $4,000.00. In her report, the Master recommended that the Corvette be awarded to Husband. The

Corvette was actually awarded to Wife by the trial court after Husband specifically requested the trial court to do so.[7]

Despite the fact that Husband requested that the trial court award the Corvette to Wife, Husband now argues that the trial court should have, in turn, provided him with the value of the transferred automobile. While there may have been merit to Husband's argument at an earlier stage in these proceedings, he cannot now ask this court to do something which he did not ask the trial court to do, namely, to give him credit for the value of the transferred automobile. *Kadel, supra.*

Order affirmed in part and reversed and remanded in part in accordance with this opinion. That part of the order granting alimony pendente lite is vacated.[8]

---

7. Apparently, the Corvette was inoperable and Husband chose to give the automobile to Wife rather than have the vehicle towed from the former marital residence or attempt to perform maintenance upon the vehicle at the same location.

8. *See* Pa.R.C.P. 1910.1(c) defining "vacate" as declaring a particular order null and void, as if it were never entered.