# Ammirato v. Ammirato

C.P. of Monroe County, Nos. 693 DR 2011, 1562 CV 2012

*Connie J. Merwine,* for plaintiff.
*William A. Watkins,* for defendant.

HARLACHER SIBUM, *J.,* Oct. 10, 2014—Mary ("wife") and Dominick Ammirato ("husband") were married on May 25, 1991 in Kresgeville, Pennsylvania. Husband was born on June 1, 1954 and is currently 60 years old. Wife was born on November 3, 1962 and is currently 51 years old. Wife has two older children from a prior marriage, and the couple has two children together. At the time of the master's hearing on April 2, 2014, the youngest child was sixteen years old.

On February 2, 2012, wife filed a complaint in divorce. On February 12, 2014, Robert C. Lear, Esq., was appointed as divorce master to hear this matter. The master's hearing was held on April 2, 2014 with both parties present accompanied by counsel. On July 9, 2014, the master filed

his master's report ("report"), Both parties filed timely exceptions to the report. Plaintiff filed an accompanying brief in support of wife's exceptions. Argument on the divorce exceptions was scheduled on September 8, 2014, at which counsel for both parties failed to appear. Although counsel's failure to attend argument constitutes a waiver of all exceptions raised by the parties, in the interest of fairness to the litigants, we will address their exceptions.

## DISCUSSION

Generally, a master's recommendation is only advisory and not binding on the court. *Jayne v. Jayne*, 443 Pa. Super. 664, 670, 663 A.2d 169, 172 (1995). In determining issues of credibility, the master's findings must be given the fullest consideration since it was the master who observed and heard the testimony and demeanor of the witnesses. *Id.* While the master's report is not to be lightly disregarded, "[a] reviewing court has a duty to make a complete and independent review of the proceeding below." *Rollman v. Rollman*, 421 A.2d 755 (Pa. Super. 1980). "Notwithstanding the fact that the master observes and hears the testimony of the witnesses, the trial court is not bound by the master's recommendations." *Tagnani v. Tagnani*, 654 A.2d 1136, 1138 (Pa. Super. 1995).

The rules of procedure require that, where exceptions are filed to a master's report, each exception must set forth a separate objection precisely and without discussion. Pa.R.Civ.P. 1920.55-2(b). The court must address all issues that are raised in good faith, and the fact that the number of errors alleged is large does not automatically result in waiver. *See Reinert v. Reinert*, 926 A.2d 539 (Pa. Super. 2007).

With this standard in mind, we now address the parties' exceptions. Wife has filed six (6) exceptions, while husband has filed ten (10) exceptions to the report. For

purposes of judicial economy, we collectively analyze those exceptions which can be disposed of as such.

Both parties filed an exception to the master's finding that the 2004 Chrysler Town and Country be transferred from husband to wife. Wife contends that husband sold the vehicle prior to the divorce hearing, but did not disclose this information at that time. As such, wife argues that the vehicle can no longer be transferred to her possession and that she should instead receive the fair market value of the vehicle, which is $8,623. Conversely, husband argues that the vehicle was a gift to their son and was traded approximately two (2) years ago.

In his report, the master noted that there were three vehicles acquired during the marriage — (1) 2004 Chrysler Town and Country; (2) 1999 Volkswagen Jetta; and a (3) 1990 Lexus. The master recommended that Husband relinquish any right, title and interest he has in the 2004 Chrysler Town and Country and deliver the vehicle over to Wife.

Upon request from either party in a divorce action, a court may equitably divide marital property without considering marital misconduct. 23 Pa.C.S.A. § 3502. "Marital property" includes all property acquired by either party during the marriage and the increase in value of any non-marital property acquired prior to the marriage or by gift. 23 Pa.C.S.A. § 3501(a)(1)-(3). Property acquired by gift, including property acquired in exchange for the-gift, is not marital property. 23 Pa.C.S.A. § 3501(a)(3). In determining the value of property, the court is free to accept all, part, or none of the testimony as to the true and correct value of property. *Aletto v. Aletto*, 371 Pa. Super. 230, 537 A.2d 1383 (1988). "[W]here the evidence offered by one party is uncontradicted, the court may adopt this value although the resulting valuation would have been

different if more accurate and complete evidence had been presented." *Holland v. Holland*, 403 Pa. Super. 116, 120, 588 A.2d 58, 60 (1991), *appeal denied*, 528 Pa. 611, 596 A.2d 158 (1991).

The master found that the 2004 Chrysler Town and Country was purchased using monies received by wife as a gift from her father. Therefore, the vehicle is not marital property and is excluded from equitable distribution. We adopt the master's finding that the 2004 Chrysler Town and Country be transferred to wife. However, as the vehicle is no longer in husband's possession and has since been sold, we will grant the wife's exception and direct husband to transfer the fair market value of the vehicle to wife. Further, wife presented a Kelly Blue Book valuation for the vehicle in the amount of $8,623, while husband did not provide any documents attesting to the value of the 2004 Chrysler Town and Country. As such, we agree with wife's assessment as to the fair market value of the vehicle and direct Husband to pay that amount to wife within thirty (30) days.

Wife's second exception argues that the master failed to specify the time period in which husband is to pay wife for 58% of the marital credit card bills. Husband's ninth exception disputes the allocation of these credit card bills, and argues that there is no factual basis to assign liability for these debts to him.

In his report, the master chose to allocate 58% of wife's credit card debts to husband, and 42% to wife. Wife has accrued $8,196 in credit card debt, which she testified was used to pay for, *inter alia*, household expenses, food, gas, and a vacuum cleaner. As between divorcing parties, debts which accrue to them jointly prior to separation are marital debts. *See Duff v. Duff*, 507 A.2d 371 (1986). Upon review of the record and the master's report, we find that

the master had reasonable basis for the chosen allocation. The master had allocated 58% of the marital estate to the wife upon finding that while both parties are earning almost the same amount, the wife's medical condition will impair her earning capacity in the future. Based upon this finding, it is reasonable for the master to call for the same allocation of the marital debt. Furthermore, husband did not provide sufficient documentation on his calculation of the marital debt. In an equitable distribution matter, the court, as finder of fact, is entitled to weigh the evidence presented and assess its credibility. *Murphy v. Murphy*, 599 A.2d 647, 653 (1991). Therefore, we disagree with husband's contention and hereby dismiss his exception. As there is no time period specified in the master's report, we grant wife's exception and direct husband to pay 58% of the marital credit card debt within thirty (30) days.

Wife's third and fourth exceptions deal with the listing of the marital home and the immediate appointment of the listing agent for the sale. We will address these exceptions simultaneously. Wife contends that the master should have directed that the house be listed immediately for sale, and the report should have specified the listing agent and not just the listing office. Husband and the younger son currently live in the marital residence located at 3533 High Hill Road, Effort, Pennsylvania. In his report, the master recommended that husband remains in the marital residence until the younger son graduates from high school. Upon the son's graduation, the master directed the marital residence to be sold by the listing agent.

In her accompanying brief, wife notes that the son is currently in high school and is scheduled to graduate in June 2015. Wife contends that there is no reason why the property should not be listed immediately. Wife notes that, given the current real estate market, waiting until June 2015 will further prolong the sale of the property

for another six (6) to twelve (12) months. We agree with wife's contention and grant this exception. Furthermore, we grant wife's exception as to designating a specific listing agent to handle the property sale.

Wife's fifth exception argues that the master erred in not requiring husband to provide retirement information as part of the divorce. In conjunction, husband's second exception argues that the master erred in his findings regarding the existence of a "military pension", which he contends is non-existent. We will dispose of these exceptions simultaneously.

In his report, the master noted that wife does not have any retirement accounts while husband may have a "Thrift Savings Plan" (TSP) account from his employment at Tobyhanna Army Depot worth $1,200 and an unascertained Federal Employees Retirement System (FERS) account. The master recommended for these accounts, once ascertained, to be allocated 50/50 via QDRO[1] and that costs be paid by husband. The court grants the wife's exception insofar as directing husband to provide the necessary documents needed to determine the existence and current value of husband's TSP and/or FERS plan within thirty (30) days of this order, and consequently denies husband's exception. The court adopts the master's proposed allocation once the value of husband's retirement benefits is confirmed.

---

1. A QDRO is a limited exception to the pension plan anti-alienation provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and Internal Revenue Code, 26 U.S.C. § 1 et seq., which otherwise prohibit assignment or alienation of pension benefits. *Berrington v. Berrington*, 534 Pa. 393, 397 n. 2, 633 A.2d 589, 591 n. 2 (1993). "A QDRO... is a domestic relations order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the [pension] plan." Id at 397 n. 3,633 A.2d at 591 n. 3. "To be 'qualified,' the order must contain certain required information and may not alter the amount or form of plan benefits." *Id.*

Wife's final exception argues that the master erred in not including the non-tuition/book portion of wife's loans in calculating the reimbursement she is to receive from husband for expenses paid using her student loans. By contrast, husband's fourth and seventh exception objects to this reimbursement. Wife contends that the master should have awarded at least 50% of the student loan refund she has received and used to pay for household expenses. Husband contends that he gave $20,000 to wife during the marriage in order to save the marital home from foreclosure. Further, husband notes that he also worked during the marriage and paid household bills. Husband argues that wife has failed to provide bills for the expenses allegedly paid.

During the hearing, wife presented testimony and evidence regarding the amount she received from her student loans and the expenses that were paid using those funds. Husband did not present any documents attesting to a $20,000 "gift" to wife. Based on the record and testimonies presented at the hearing, the master reasonably concluded that a "reimbursement" of $7,500 from husband to wife for funds wife used to pay for household expenses using her school loans was fair and equitable. While this amount is not 50%, there is no requirement under equitable distribution to divide the assets and liabilities equally. We adopt the master's finding and deny wife's and husband's exceptions.

Husband's first and second exceptions have been dealt in conjunction with wife's exceptions. Husband's third exception argues that the master erred in his findings regarding balances in bank accounts from which a distribution has been recommended. According to husband, wife took $13,000 from their accounts shortly after leaving the marital home. Husband now contends that he cannot pay an additional 58% from funds that have

been reduced by wife.

The master's recommendation was based upon testimony and evidence presented during the hearing. Husband brings this alleged withdrawal without evidence of such. Husband neither testified to this withdrawal during the hearing, nor presented bank information corroborating his allegation. We are not inclined to disagree with the master's finding without anything on the record. Accordingly, husband's exception is denied.

In his fifth exception, husband argues that the master erred in his findings regarding wife's health issues and maintains that there is no credible evidence establishing the wife's medical condition. In the master's report, he made findings of fact regarding the health of both parties. Husband appears to be in good health, while wife has been diagnosed with multiple sclerosis or "MS". During the hearing, wife testified to having been diagnosed with MS shortly after her father passed away. Wife testified that she has taken medication in order to treat her MS, and that the disease is currently in remission.

Credibility of witnesses in a divorce action is not entirely resolved by the master. The court has the duty to make a complete and independent review of all the evidence presented in a divorce case. This includes a complete review of the weight and credibility to be accorded to the testimony of the witnesses. *Riley v. Riley*, 369 A.2d 1314 (1976). The reviewing court must examine the record in detail so as to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, patent falsehoods, and other factors by which credibility may be ascertained. *Ryave v. Ryave*, 249 Pa. Super. 78, 375 A.2d 766 (1977). However, where the issue is one of credibility and the master is the one who heard the

testimony and observed the demeanor of the witnesses, the reviewing court must give his findings regarding credibility the fullest consideration. *Ryave v. Ryave, supra.*

Based on a review of the record, we find that the master's finding and credibility determination is reasonable. Wife testified to her medical diagnosis, presented evidence of her medical bills, and husband has not shown sufficient evidence to contradict wife's testimony. Thus, we deny husband's exception.

Husband's sixth exception dealt with the 2004 Chrysler Town and Country and has been addressed above.

Husband's eighth exception argues that the master erred in allocating 50% of the husband's income tax refunds to wife. Husband contends that when the tax returns were filed, wife had already left the marital home. Furthermore, husband argues that wife had unilaterally filed electronic tax returns in 2008, and had kept the tax refund she received.

The record reflects that in 2011, husband filed amended income tax returns for taxable years 2010 and 2009.[2] Husband testified that these amended tax returns were filed after he and wife had separated, and that he retained the refunds for these years. He also testified that he did not share the refund with wife. Income tax refunds that are born out of marital income are subject to equitable distribution.[3] The refund is marital property but only to the extent that it is a repayment of excessive tax payments previously made with marital funds. *See Cerny v. Cerny,* 440 Pa. Super. 550, 656 A.2d 507 (1995). The

---

2. Husband filed amended tax returns reporting both parties' income during those years.

3. The inchoate right to receive an income tax refund in the future is property. *Johnson v. Johnson,* 847 So. 2d 1157 (Fla. Dist. Ct. App. 5th Dist. 2003).

classification of the tax refund is based upon the source of the overpayment, and not the category under which the parties filed their tax return. Thus, the master had a reasonable basis to allocate the post separation income tax refunds received by husband after he filed amended tax returns. The amended 2009 and 2010 tax returns reported marital income earned by both husband and wife during the marriage. The resulting tax refund is also marital property. Therefore, we deny husband's exception.

Husband's final exception argues that the master erred in awarding attorney's fees to wife. He contends that the master does not have sufficient basis to award counsel fees as both parties have equal earning capacity. Furthermore, husband argues that the master should not have awarded attorney's fees based on husband's unsuccessful motions to disqualify wife's attorney. In his report, the master noted that husband filed motions to disqualify wife's attorney, but never showed up for the hearing. As a result, wife had to expend resources in order to defend such allegations. The master awarded wife with $4,500 in counsel fees payable within thirty (30) days of the divorce decree.

An award of counsel fees is warranted when it will promote the fair administration of justice by enabling the dependent spouse to maintain or defend the case without being placed at a financial disadvantage. *Perlberger v. Perlberger*, 626 A.2d 1206 (Pa. Super. 1993). Counsel fees are awarded based on a review of all relevant factors, including the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. *Id.* at 1207; *Teodorski v. Teodorski*, 857 A.2d 194, 201 (Pa. Super. 2004). Moreover, a party to an action may be awarded counsel fees when another party engages in dilatory, obdurate, or vexatious conduct during the pendency of a matter. *See* 42 Pa.C.S.A. § 2503(7). Conduct is "dilatory" where the record

demonstrates that counsel displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work. *See Gertz v. Temple Univ.*, 661 A.2d 13, 17 n. 2 (Pa. Super. 1995). Further, a suit is "vexatious" if brought without legal or factual grounds and if the action served the sole purpose of causing annoyance. *Miller v. Nelson*, 768 A.2d 858, 862 (Pa. Super. 2001) (citations omitted).

The master based his recommendation to award counsel fees on husband's conduct. The record reflects that Husband filed numerous *pro se* motions and petitions that prolonged this litigation and resulted in substantial legal fees. Husband also filed a motion to disqualify wife's counsel, but failed to attend the hearing. Wife had to incur additional legal costs to defend against husband's unproven allegations. These instances delayed the proceedings unnecessarily and caused additional legal work. As such, we find the master's award of counsel fees to be reasonable. We adopt the master's finding and deny husband's exception.

Accordingly, we enter the following order.

## DECREE

And now, this 10th day of October, 2014, upon consideration of the parties' exceptions to the report and recommendation of the divorce master, it is ordered and decreed as follows:

1. Mary Ammirato and Dominick Ammirato are divorced from the bonds of matrimony.

2. Wife's 1st exception is granted and husband is directed to pay the fair market value of the 2004 Chrysler Town and Country in the amount of $8,632.00 within thirty (30) days of this order.

3. Wife's second exception is granted. Husband is

directed to pay 58% of wife's credit card bills within thirty (30) days of this order.

4. Wife's third and fourth exceptions are granted. The marital home located at 3533 High Hill Road, Effort, Pennsylvania shall be listed for sale immediately, with costs of appraisal to be paid by husband. Ms. Debra Modica is also designated as listing agent for said property. Any agreement of sale entered into by the parties shall provide that closing on the sale of the house shall not occur prior to June 30, 2015.

5. Wife's fifth exception is granted. Husband is directed to provide any and all documents verifying his Thrift Savings Plan and/or fers accounts.

6. Wife's sixth exception is denied.

7. All of husband's exceptions are denied.

8. In all other aspects, the master's recommendation is adopted as an order of the court and the parties are directed to carry out the terms thereof.