J-A24015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CHRISTINE ANN CYGAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| DAVID J. CYGAN | |
| | No. 525 WDA 2017 |

Appeal from the Order Entered March 30, 2017
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 05-003412-002

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED OCTOBER 27, 2017**

Christine Ann Cygan ("Wife") appeals from the March 30, 2017 order entered in the Allegheny County Court of Common Pleas overruling her exceptions to the Master's recommendations and decreeing her divorced from David J. Cygan ("Husband").  We affirm.

The trial court summarized the history of this case as follows:

> The subject marriage was the second marriage for each party. The parties married on July 10, 2004, separated on June 17, 2014, and their union produced no children. At the time of their marriage, Wife had one child, who was in high school, while Husband had two children, who were either in college or soon to be commencing college. Husband, while divorced, had not yet commenced equitable distribution proceedings with his first wife. Those proceedings were pending in this Court . . . and were ultimately tried before a master in 2009.
>
> After their marriage, the parties lived together in Pittsburgh for eighteen months, following which Wife and

her son moved to California. Wife testified that she moved to California to establish residency for her son's college tuition purposes. She further testified that Husband ultimately intended to move west and join them. Husband testified that Wife's move was intended to be temporary, and that she was to return to Pittsburgh. Regardless, the parties lived across the country from one another for the duration of their ten year marriage. As the record reflects, this arrangement was not financially viable.

During the course of the parties' marriage, Husband paid his own household expenses, Wife's household expenses, alimony pendente lite [("APL")]/child support/alimony to his first wife, monthly travel expenses for himself and [W]ife, college tuition for his two sons, Wife's son's living expenses and high school tuition, the parties' credit card debt, and the parties 2009 $65,000 IRS debt.[1] In order to meet these expenses, Husband liquidated and spent his pre-marital Fidelity account ($417,932), sold the timber on his pre-marital farm ($12,000-$14,000), and incurred a home equity [line of credit ("HELOC")] on his farm ($177,226). Husband is now a 65-year-old hospital staff physician in poor health, with limited retirement assets and enormous debt.

Stmt. in lieu of Opinion Pursuant to Pa.R.A.P. 1925(a), 5/19/17, at 2-3

("Stmt. in lieu of 1925(a)") (internal footnotes omitted).

The subject litigation originally commenced in 2005 when [Wife] filed a Complaint for Support against [Husband]. Shortly thereafter[,] Husband filed a six-count Complaint in Divorce against Wife. Neither party pursued their claim until 2009, when Wife obtained an [APL] hearing date and Husband filed the requisite pleadings to pursue equitable distribution. The parties again abandoned the pursuit of their claims until 2014, when an

---

[1] While Wife has a Master's degree in fine arts (Performing Arts/Literature) and previously worked for theatrical and talent agencies, N.T., 6/30/16, at 28-29, she testified that she had no work history during the marriage, *id.* at 28-29; Wife's Br. at 36.

APL order was entered against Husband, and the matters of equitable distribution and related claims proceeded in the normal course.

The parties were unable to reach a settlement and ultimately, a trial was scheduled before Master Chester Beatty, Esquire ("Master") on the parties' economic claims. The Master issued his August 26, 2016 Report and Recommendation following a hearing. Wife filed exceptions to the Master's Recommendations, and this Court entered an order addressing those exceptions on February 2[8], 2017. A decree in divorce was entered on March 30, 2017, and Wife filed a timely Notice of Appeal of this Court's exceptions Order to the Superior Court on April 5, 2017.

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), this Court's Order of February 2[8], 2017, a copy of which is attached hereto, shall serve as this Court's Opinion with respect to the above captioned Appeal filed by Wife.

*Id.* at 1-2.

Wife raises the following issues on appeal:

1. The Court committed an error of law and/or an abuse of discretion in failing to equitably divide the marital property between the parties.

2. The [C]ourt erred by setting off the [sic] against the marital 401(k) fund all of Husband's [HELOC] which was non-marital debt which the Husband incurred against Husband's premarital home, said set off being in violation of 23 [Pa.C.S. § 3501(a.1)], in that a decrease in the value of non-marital property shall *not* be offset against any other marital property subject to equitable distribution.

3. The [C]ourt committed an error of law and abuse of discretion by refusing to award alimony to Wife, when the alimony factors set forth in 23 [Pa.C.S. § 3701(b)] weigh heavily in favor of alimony, [W]ife is in poor health, has no work history during the marriage, and cannot apply for social security on [H]usband's account until after she has been divorced for two years.

- 3 -

4. The Court erred as a matter of law and/or abused its discretion, when the court affirmed the master's recommendation that alimony pendente lite terminates upon entry of the divorce decree, when alimony pendente lite continues for the duration of the litigation[.]

5. The Court committed an error of law and abuse of discretion by holding that the IRS debt constituted marital debt when the evidence and testimony in the record and the admissions in Husband's brief, established that Husband incurred the IRS debt as a result of Husband's failure to remit the tax owed when Husband liquidated his premarital, pretax Fidelity retirement in order to pay his previous [w]ife, as the result of which, the IRS debt was non marital debt, and the record established that the IRS granted Wife innocent spouse status as the result.[2]

6. The Court erred by denying Wife's claim for counsel fees, despite the disparity in incomes, and Wife's need.

Wife's Br. at 8-9 (emphasis in original).

"Our scope of review in equitable distribution matters is limited. Awards of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and will not be disturbed absent an error of law or abuse of discretion." *Smith v. Smith*, 749 A.2d 921, 924 (Pa.Super. 2000).

## I. *Equitable Distribution*

Wife's first, second, and fifth issues challenge the equitable distribution

---

[2] Wife's fifth issue as stated does not comport with the argument she makes, which is that, as a result of Husband attempting to classify the farm as an orchard rather than a residence in their 2009 joint tax return, he incurred in a $65,000 debt.

- 4 -

award. "In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights."[3] ***Morgante v. Morgante***, 119 A.3d 382, 387 (Pa.Super.

_____

[3] The relevant factors in an equitable distribution determination are:

> (1) The length of the marriage.
>
> (2) Any prior marriage of either party.
>
> (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
>
> (4) The contribution by one party to the education, training or increased earning power of the other party.
>
> (5) The opportunity of each party for future acquisitions of capital assets and income.
>
> (6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
>
> (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.
>
> (8) The value of the property set apart to each party.
>
> (9) The standard of living of the parties established during the marriage.
>
> (10) The economic circumstances of each party at the time the division of property is to become effective.

*(Footnote Continued Next Page)*

2015) (quoting **Biese v. Biese**, 979 A.2d 892, 895 (Pa.Super. 2009)). "[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." **Moran v. Moran**, 839 A.2d 1091, 1095 (Pa.Super. 2003).

Section 3501(a) of the Divorce Code defines "marital property" as "all property acquired by either party during the marriage and the increase in value of any non[-]marital property acquired pursuant to paragraphs (1) and (3) as measured and determined under subsection (a.1)." 23 Pa.C.S. § 3501(a). Subsection 3501(a.1) sets forth the rules for measuring and determining the increase in value of the parties' non-marital property:

> The increase in value of any non[-]marital property acquired pursuant to subsection (a)(1) and (3) shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as

*(Footnote Continued)* ─────────────

> (10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.
>
> (10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.
>
> (11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a).

> close to the hearing on equitable distribution as possible, whichever date results in a lesser increase. Any decrease in value of the non[-]marital property of a party shall be offset against any increase in value of the non[-]marital property of that party. However, a decrease in value of the non[-]marital property of a party shall not be offset against any increase in value of the non[-]marital property of the other party or against any other marital property subject to equitable division.

23 Pa.C.S. § 3501(a.1).

Wife claims that the trial court erred in concluding that the HELOC Husband obtained on his farm was a marital debt. She argues that Husband did not produce the HELOC records and did not prove that he used the HELOC for his current marriage. Wife contends that, because there is no evidence that the HELOC is marital debt, the trial court erred in (1) using its value to decrease the value of Husband's farm, and (2) using its value to offset the increase in value of the Merrill Lynch 401(k) account ("401(k)"), which is a marital asset.

Husband obtained the HELOC in October 2005 while the parties were married. N.T., 6/30/16, at 147-48. He testified that he obtained the HELOC due to living expenses, which included his and Wife's household expenses as they lived separately, monthly travel expenses for himself and Wife, Wife's son's living expenses and high school tuition, the parties' credit card debt, and the parties' 2009 $65,000 IRS debt. *Id.* at 206-07, 216. While Husband's expenses also included Husband's payments to his first wife and college tuition for his two children from his first marriage, Wife did not prove that the proceeds from the HELOC were used exclusively for non-marital

purposes or what portion of the proceeds were used for non-marital purposes.[4] In fact, Wife testified that she did not know what Husband used the loan to pay. *Id.* at 53. The trial court found that the HELOC "was taken during the marriage and the proceeds were utilized, not to improve the farm, but for living expenses." Trial Ct. Order, 2/28/17, at 2 (unpaginated) ("Feb. 28 Order"). It further found "it equitable to treat the home equity loan as a separate marital debt." *Id.*

We conclude that the trial court did not abuse its discretion in finding that the HELOC on the farm is a marital debt as it was incurred during the marriage and was used for marital expenses, *see Litmans v. Litmans*, 673 A.2d 382, 391 (Pa.Super. 1996) ("Between divorcing parties, debts which accrue to them jointly prior to separation are marital debts."), and in using the HELOC to decrease the farm's value.

Further, Husband testified that he owned a 401(k) with a value of $9,337 at the time of marriage and a value of $168,822 at the time of separation. N.T., 6/30/16, at 151-52. The $159,485 increase in value, which was accrued during the marriage, is marital property. *See* 23 Pa.C.S. § 3501(a). Thus, because the farm and the 401(k) are Husband's pre-marital property, which respectively decreased and increased in value during

---

[4] Wife also argued that Husband used the HELOC proceeds to fund his obligations to his first wife; however, Husband obtained the HELOC in 2005, four years before the court's order directing him to make certain payments to his first wife.

the marriage, the trial court did not abuse its discretion in finding that the decrease in the farm's value offset the increase in the 401(k)'s value. **See** 23 Pa.C.S. § 3501(a.1) ("Any decrease in value of the non[-]marital property of a party shall be offset against any increase in value of the non[-]marital property of that party.").

Wife also claims that the IRS debt is not marital. She claims that the IRS debt was accrued because Husband's accountant mischaracterized the farm as an orchard, rather than a residence.[5] She further notes the IRS granted her innocent spouse status.

The Master found that "[a]lthough the IRS relieved Wife from this obligation . . . it is still a marital debt as it originated prior to the parties' separation." Report and Recommendation of the Master, 8/26/16, at 6 ("Master's Rec."). The trial court agreed and concluded that "the fact that the IRS has relieved Wife from paying this debt does not change its marital classification." Feb. 28 Order at 4. It further stated that, "Wife shared in the increased income available when the tax was not paid, and likewise, should share in the resulting debt." **Id.** We agree and conclude that the trial court did not abuse its discretion in finding that the IRS debt is a marital debt. **See Litmans**, 673 A.2d at 391.

_____

[5] As noted above, Wife describes the nature of the accounting as an error differently in her statement of issues presented. **See supra** note 2 and accompanying text.

## II.   *Alimony Pendente Lite*

Wife argues that the trial court erred in terminating her APL upon the entry of the divorce decree because APL should continue throughout the appeal process and any remand until a final order has been entered.

We agree that APL ordinarily should continue through the appeal process.  *Schenk v. Schenk*, 880 A.2d 633, 647 (Pa.Super. 2005).  The docket reveals that Wife filed an emergency motion to reinstate APL pending appeal, which the trial court granted.  The trial court reinstated APL in the amount of $5,137.95 plus $100.00 in arrears per month.  Accordingly, Wife's claim is moot.  *See id.* at 647 ("It is . . . upon this Court's disposition of this case and our affirmance of the divorce Decree that husband's obligation terminates."); *see also Prol v. Prol*, 840 A.2d 333, 335-36 (Pa.Super. 2003) (holding that wife's absolute right to appeal became final when this Court affirmed divorce decree and wife was "not entitled to the continuation of [APL] during the pendency of her discretionary appeals").

## III.  *Alimony*

"Alimony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill."  *Moran*, 839 A.2d at 1097 (quoting *Twilla v. Twilla*, 664 A.2d 1020, 1022 (Pa.Super. 1995)) (emphasis in original).  Further, "the purpose of alimony is not to reward one party and to punish

the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." *Id*. at 1096 (quoting *Twilla*, 664 A.2d at 1022). In determining "whether alimony is necessary and to establish the appropriate nature, amount, and duration of any alimony payments, the court is required to consider **all** relevant factors, including the 17 factors that are expressly mandated by statute."[6] *Lawson v. Lawson*, 940 A.2d 444, 447 (Pa.Super.

---

[6] Section 3701(b) of the Divorce Code sets forth the relevant factors in an alimony determination:

> In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:
>
> (1) The relative earnings and earning capacities of the parties.
>
> (2) The ages and the physical, mental and emotional conditions of the parties.
>
> (3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
>
> (4) The expectancies and inheritances of the parties.
>
> (5) The duration of the marriage.
>
> (6) The contribution by one party to the education, training or increased earning power of the other party.
>
> (7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

*(Footnote Continued Next Page)*

2007) (emphasis in original).

Wife claims that the alimony factors weigh heavily in her favor. Wife argues that she has severe physical impairments, has no work history during the marriage and no income, and cannot apply for social security on account

*(Footnote Continued)* _____

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b).

of Husband's earnings until after she has been divorced for two years. Wife further argues that the trial court's conclusion that she failed to present competent evidence that she was disabled or unable to work was erroneous.

After considering the appropriate factors, the Master concluded:

> While this has been a ten[-]year marriage, the parties lived in separate households for eight of those years. Husband provided support to Wife for the eight years they were residing in separate households, and has been paying [APL] to Wife since [October 1,] 2014 which was three months after their stipulated date of separation.
>
> In light of the fact Husband is assuming all of the marital debt, and due to the fact that Husband has been providing support to Wife in one form or another for nearly ten years, alimony is not necessary. Additionally, Wife is receiving the bulk of the marital estate while Husband is receiving all of the marital debt. Admittedly, Husband is receiving a bulk of the liquid assets in the marital estate; however, since the liquid portion of the marital estate is comprised of the increases in Husband's non-marital assets, it is not unreasonable to award those assets to him. Also, as previously indicated, the increases that occurred in Husband's non-marital assets were not attributed to any of Wife's efforts by way of contribution to the household or to Husband's earning power, as the parties were residing in separate households for eighty percent of their marriage.

Master's Rec. at 9.

The trial court concluded:

> Husband did support two households for the majority of the marriage. This reality imposed a financial strain on Husband and had a negative impact on the value of the marital estate. At trial, Husband testified that his health was poor, and that he intended to retire at age 65 in January of 2017. Husband will still be required to pay the mortgage and [HELOC] on the farm, as well as the IRS debt. Wife, on the other hand, has no marital debt to pay and testified that she had only 3 more months on her car

loan. With her earning capacity and arrears payment (as set forth below) she can afford to pay her reasonable living expenses.

The Master calculated the arrears owed to Wife at $17,948.10 as of 8/25/16. The Master recommended that . . . Husband pay $100 per month on the arrears. This Court will increase Husband's arrears payment to $800/month, which will provide Wife with additional revenue for a period of close to two years.

Feb. 28 Order, at 3-4.

The trial court further concluded "that in addition to the mortgage, [HELOC], credit card debt, and IRS debt," Husband still had to pay $1,000.00 per month in alimony to his first wife. Stmt. in lieu of 1925(a) at 5. Finally, the trial court found that Wife "failed to present competent evidence that she is disabled or unable to work." *Id.*

Wife testified that she has not applied for social security disability. N.T., 6/30/16, at 82. Further, she presented no evidence of disability other than her and her sister's testimony. While Wife testified that due to her physical limitations, it is unlikely that she can maintain full-time, minimum-wage employment, *id.* at 30, she also testified that she could still get employment as an actor posing as an attorney, mother, grandmother, office professional, or other stationary role. *Id.* at 123. Wife further testified that she had previously worked as a property manager, but has not sought employment as a property manager or an assistant to a property manager. *Id.* at 80-81. Wife chose to limit her search to acting jobs and sought no additional certifications or trainings in other areas. *Id.* at 81-82.

As the trial court found, Wife has no marital debt other than her car loan; as of February 2017, she had three monthly payments remaining on the loan. Furthermore, she was awarded $13,992.97 of the marital estate; has received $5,137.95 in APL per month since October 1, 2014, which the Master increased to $6,691.10 effective May 3, 2016;[7] and has been receiving an additional $100.00 per month in arrears, which the trial court increased to $800.00 to "provide Wife with additional revenue for a period close to two years."[8] Feb. 28 Order, at 3-4. Finally, in two years from the divorce decree, Wife can apply for social security on account of Husband's earnings.

Our Supreme Court has stated that "the issue of physical impairment and ability to earn an income is a factual one." ***O'Callaghan v. O'Callaghan***, 607 A.2d 735, 737 (Pa. 1992). Thus, the trial court is in a better position to make that determination. We conclude that the trial court's factual findings are supported by the record.

_____

[7] Following Wife's May 9, 2017 emergency motion to reinstate APL pending appeal, the trial court ordered Husband to pay $5,037.95 in APL plus $100.00 in arrears per month.

[8] It appears that the trial court's May 12, 2017 order, which decreased arrear payments to $100.00 was a temporary measure due to Wife's alimony payments being reinstated, but that at the termination of this appeal the arrear payments are to return to $800.00 per the trial court's February 28, 2017 order.

Accordingly, because economic justice and the reasonable needs of the parties were achieved by equitable distribution, **see Moran**, 839 A.2d at 1097, we conclude the trial court did not abuse its discretion in rejecting Wife's claim for alimony.

## IV.   *Counsel Fees*

Section 3702 of the Divorce Code provides that "the court may allow a spouse . . . reasonable counsel fees and expenses."  23 Pa.C.S. § 3702. "The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be 'on par' with one another."  **McCoy v. McCoy**, 888 A.2d 906, 909 (Pa.Super. 2005) (quoting **Teodorski v. Teodorski**, 857 A.2d 194, 201 (Pa.Super. 2004)).  "Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution."  **Id.** (quoting **Teodorski**, 857 A.2d at 201).

Wife contends that the trial court should have granted her request for counsel fees because her "financial situation is desperate," Husband cost her "substantial fees due to his serial cancellation of her medical insurance," and Husband failed to comply with discovery.  Wife's Br. at 46.

The Master found that both Husband and Wife had incurred counsel fees and that because Wife had been receiving over $5,000.00 in APL, she was able to pay her own counsel fees. Master's Rec. at 9. The Master further found that Husband had not caused any "unnecessary work to be performed by Wife's counsel." *Id.* The trial court agreed with the Master and denied Wife's exception. Feb. 28 Order at 4. We find no abuse of discretion. *See Spink v. Spink*, 619 A.2d 277, 279 (Pa.Super. 1992) (stating APL is granted "based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets 'which are the financial sinews of domestic warfare'") (quoting *DeMasi v. DeMasi*, 597 A.2d 101, 104 (Pa.Super. 1991)).

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/27/2017</u>